# FARNAN LLP

April 7, 2022

**VIA E-FILING**
The Honorable Colm F. Connolly
J. Caleb Boggs Federal Building
844 N. King Street
Unit 31, Room 4124
Wilmington, DE 19801-3555

      RE:  *Invitae Corporation v. Natera, Inc.*
            **C.A. No. 21-cv-669-CFC**
            *Invitae Corporation v. Natera, Inc.*
            <u>**C.A. No. 21-cv-1635-CFC**</u>

Dear Chief Judge Connolly,

      Plaintiff Invitae Corporation ("Invitae") respectfully requests an order compelling Defendant Natera, Inc. ("Natera") to comply with its obligation to produce core technical documents pursuant to the Scheduling Order.  *See* D.I. 36 ¶ 7.

      In this case, Invitae asserts against Natera three patents related to analysis and assembly of genetic sequences, as used in Natera's Signatera product, which is used to test for cancer recurrence in cancer patients.  In both its Complaint and preliminary and exemplary claim chart supporting the Complaint, Invitae expressly identified Natera's sequence analysis and assembly process as infringing these patents.  *See* D.I. 1 ¶ 21; D.I. 1 Ex. 6.  Pursuant to the Scheduling Order, Natera was supposed to have produced by March 8, 2022 "core technical documents related to the accused product(s), ***sufficient to show*** how the accused product(s) work(s), ***including but not limited to*** non-publicly available operation manuals, product literature, schematics, and specifications."  D.I. 36 ¶ 7.

      On March 8, however, Natera produced a mere 26 documents, most of which were irrelevant.  Of Natera's 26 documents, only three even mentioned in passing

the sequence analysis and assembly process used by Natera, simply naming the software and identifying the licensor, Sentieon. *See* Exs. A – C. Natera produced no documents showing how the sequence analysis and assembly process actually works. It is inconceivable that Natera does not have detailed information regarding how every aspect of its product—which is for the mission-critical task of cancer testing—works. And, in meet and confer, Natera did not deny this. Just the opposite, Natera acknowledged that it has further documents, but that it was not obligated to produce them because they were not what it deemed "core":

> Our position was not that 'Natera has no further information showing how Sentieon software functions beyond that which was produced on March 8, 2022'. Our position was, and is, that we have no further core technical documents showing the design or operation of the Sentieon software.

Ex. D. Natera had no further justification for its inadequate 26-document production, nor did it have an explanation as to what, in its opinion, would elevate a document to the exalted status of "core" such that it would require production. Further exemplifying Natera's antics, Natera referred Invitae to publically available manuals from Sentieon's website (which Natera never produced), but with the disclaimer that "[t]o be clear, we are not making any representations about the accuracy of this information." *Id.*

To summarize, Natera has produced only 26 documents, none of which actually describe how the relevant features of the accused products work. Natera then admitted that it possesses further relevant documents, but refused to produce them based on the semantic argument that the documents were not "core." Instead,

Natera pointed Invitae to some publicly available documents, but told Invitae it probably should not rely on them because they might be inaccurate.

This behavior should be put to a stop. The Scheduling Order requires production of "core technical documents related to the accused product(s), ***sufficient to show*** how the accused product(s) work(s), ***including but not limited to*** non-publicly available operation manuals, product literature, schematics, and specifications." D.I. 36 ¶ 7. Thus, the Scheduling Order defines "core" documents not by their type, but by their content. Specifically, they are "sufficient to show" how the accused products work. The Scheduling Order is clear that these documents are "***not*** limited to" particular types of documents, such as manuals. To the extent Natera has further information beyond its 26 document production—and Natera has admitted that it does—Natera should produce it, not withhold it based on a subjective assessment that the information is not reflected in a document category that Natera deems "core."

Courts in this district regularly require parties to promptly supplement their core document production where, as here, a party has utterly failed to produce documents sufficient to show how the accused products work. *See, e.g., Contour IP Holding, LLC v. GoPro, Inc.*, Oral Order, C.A. No. 15-cv-1108-LPS (D. Del. Jul. 6, 2016); *see also Greatbatch Ltd. V. AVX Corp.*, C.A. No. 13-723-LPS, 2016 WL 1627810, at *1-2 (Apr. 18, 2016). Natera's failure to produce core technical documents is highly prejudicial to Invitae's ability to prepare its initial infringement claim charts, which are due April 15, 2022. Accordingly, Invitae respectfully requests that the Court compel Natera to immediately produce the core technical documents related to the sequence analysis and assembly process in the accused products.

Respectfully submitted,

/s/ Michael J. Farnan

Michael J. Farnan

cc: Counsel of Record (Via E-Mail)