IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INVITAE CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 21-669 (GBW) |
| ) | |
| NATERA, INC., ) | REDACTED - PUBLIC VERSION |
| ) | |
| Defendant. ) | |

| | |
|---|---|
| INVITAE CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 21-1635 (GBW) |
| ) | |
| NATERA, INC., ) | |
| ) | |
| Defendant. ) | |

**LETTER TO THE HONORABLE GREGORY B. WILLIAMS FROM
DEREK J. FAHNESTOCK REGARDING DISCOVERY DISPUTE**

OF COUNSEL:

Eric Alan Stone
Daniel J. Klein
Eliza P. Strong
Ariella C. Barel
GROOMBRIDGE, WU, BAUGHMAN &
  STONE LLP
565 Fifth Avenue, Suite 2900
New York, NY 10017
(332) 269-0030

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Karen Jacobs (#2881)
Brian P. Egan (#6227)
Derek J. Fahnestock (#4705)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
kjacobs@morrisnichols.com
began@morrisnichols.com
dfahnestock@morrisnichols.com

*Attorneys for Defendant Natera, Inc.*

Original filing date: January 24, 2023
Redacted filing date: January 31, 2023

Dear Judge Williams:

Natera respectfully moves the Court to compel Invitae to produce documents and communications related to contracts with third parties conveying rights to the patents-in-suit.

**Background**

Plaintiff Invitae asserts that Natera infringes claims of three patents through Natera's use of software from a third party called Sentieon. Invitae seeks damages in the form of a reasonable royalty and lost profits. It has also asserted secondary considerations in response to Natera's claims that the patents are invalid as obvious.

Invitae did not invent the asserted patents. Natera served document requests and interrogatories seeking to understand how Invitae acquired rights to them and any transactions involving them. (Public data from the Patent Office shows only that a company called Molecular Loop Biosciences assigned the patents to Invitae.)

Invitae produced ▮▮▮▮▮▮ agreements relating to transactions by which these patents were assigned ▮▮▮▮▮ (and, as explained further below, has refused to produce anything else on the subject). From those agreements, as best Natera can determine, this is what happened: Invitae bought a company called Good Start Genetics ("GSG") in 2017. The patents' named inventors, Gregory Porreca and Caleb Kennedy, worked at GSG at the time. By acquiring GSG, Invitae acquired GSG's patents, patent applications, and any patents later issuing from those and related applications. This included rights to the patents-in-suit, some of which issued after the acquisition.



Then, something curious happened. About a year after the GSG acquisition, ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The founding CEO of MLB was none other than Gregory Porreca, one of the two named inventors on the patents-in-suit. ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**The Pending Discovery Dispute**

As noted above, Natera has sought documents and information related to any conveyance of rights in the asserted patents. *See* Ex. 4 at 6–10 (RFP Nos. 1–6); Ex. 5 at 25–29 (RFP Nos. 82, 84–85); Ex. 6 at 19–20 (Interrogatory No. 5). Invitae has produced only the ▇▇▇▇ contracts themselves. Indeed, in response to one of Natera's first interrogatories, Invitae flat-out denied that it had ***ever*** ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Natera also knows that the ▇▇▇▇ documents produced thus far are not the complete universe. When asked for the facts and circumstances surrounding Invitae's acquisition of the asserted patents, Invitae answered that in a ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.



Natera seeks to understand the details and reasons for this complicated web of transactions, because this information directly bears on the very patents being asserted in this case, how they were acquired and why, and how they were valued, all of which will bear on arguments being raised by both parties about the validity of the patents and Invitae's damages claim. Natera therefore respectfully requests that Invitae be compelled to produce (1) non-privileged internal documents and correspondence related to and leading up to all transactions or conveyances of rights or interests in the asserted patents, or in applications to which the asserted patents claim priority; and (2) documents and correspondence exchanged by Invitae with any party to those transactions or conveyances of rights.

**Natera's Position and Response to Invitae's Position as Natera Understands It**

The relevance of the requested documents is clear. Invitae ▇▇▇▇▇▇▇▇▇▇▇▇▇ the asserted patents, with ▇▇▇▇▇▇▇▇▇▇▇▇ along the way. Licenses to and sales of the patents-in-suit inform all manner of litigated issues, including the value of the intellectual property, the obviousness of the patents, and the forms and amount of damages available to Invitae were it to prevail.

**Damages:** Invitae seeks a reasonable royalty, among other forms of damages. Ex. 6 at 7–9; Ex. 7 at 3–4. Part of determining a reasonable royalty is analyzing what a willing buyer and willing seller would agree to pay to allow the defendant to take a license to the asserted patents. *See Lucent Techs., In.* v. *Gateway, Inc.*, 580 F.3d 1301, 1324–25 (Fed. Cir. 2009); *Georgia-Pacific Corp.* v. *U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). Real-world transactions by the parties involving those patents are a critical piece of evidence. *See, e.g., Integra Lifesciences I, Ltd.* v. *Merck KGaA*, 331 F.3d 860, 870–71 (Fed. Cir. 2003), *vacated on other grounds, Merck KgaA* v. *Integra Lifesciences I, Ltd.*, 545 U.S. 193 (2005) (finding the acquisition price for assets including the asserted patents is relevant to calculating a reasonable royalty award); *Georgia-Pacific*, 318 F. Supp. at 1120. Where such transactions involve assets in addition to the

asserted patents, the parties must apportion the transaction consideration to account for only the value attributable to the asserted patents. *See, e.g., Roche Diagnostics Corp.* v. *Meso Scale Diagnostics, LLC.*, No. 17-189-LPS, 2019 WL 5310220, at *1 (D. Del. Oct. 21, 2019); *Sprint Comms. Co. L.P.* v. *Comcast IP Holdings, LLC*, No. 12-1013-RGA, 2015 WL 410342, at *2–*3 (D. Del. Jan. 29, 2015). Invitae's contracts ████████████████████████████████████████ ████████████████████████████████████ Natera is entitled to learn how the parties, separately and together, valued the components of ███████████████ and what precipitated these transactions. It is likely that this correspondence will elucidate the reasons for the ████████ transaction and the value of the patents in suit. That information should be in the documents requested; Natera has no other means of obtaining it.

**Invalidity:** Invitae intends to respond to Natera's invalidity defenses by arguing that asserted patents are inventive, novel, non-obvious, and useful, that those asserted patents fulfill a long-felt need, and that inventions embodying the patents are commercially successful. *See, e.g.,* Ex. 6 at 9–11. The statements that Invitae and its contractual counterparties made about these patents, and the value they ascribed to them, bear directly on these issues.

There is ample precedent holding that the documents and communications Natera seeks are discoverable and relevant to issues of both damages and validity. *See BioDelivery Scis. Int., Inc.* v. *Chemo Research, SL*, No. 19-cv-444, D.I. 147 (Oral Order) (D. Del. Jan. 30, 2020) (granting motion to compel communications and documents concerning licensing of the asserted patents because such documents would be relevant to secondary considerations, including long-felt need); *Phoenix Sols. Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 582–83 (N.D. Cal. 2008) (finding a "multitude of ways" communications with third parties related to license negotiations could be relevant to the litigation, including plaintiff's understanding of the scope of the asserted patents, knowledge of prior-art systems, and position on a reasonable royalty rate); *Kajeet, Inc. v. Qustodio, LLC*, 2019 WL 8060078, at *7–*8 (C.D. Cal. Oct. 22, 2019) (finding the positions taken by negotiating parties prior to reaching a final agreement are relevant to issues of damages, infringement, and invalidity.); *MSTG, Inc. v. AT & T Mobility LLC*, No. 08-cv-7411, 2011 WL 841437, at *2 (N.D. Ill. Mar. 8, 2011) (holding communications regarding patent transactions relevant to determining how parties reached terms of the agreement); *Fresenius Medical Care Holding Inc.* v. *Baxter Int., Inc.*, 224 F.R.D. 644, 653–54 (N.D. Cal. 2004) ("The amount paid to acquire a company with desired patents, and the amount of the acquisition amount allotted to a particular patent is relevant to the establishment of a reasonable royalty.").

\* \* \* \*

Contrary to Invitae's position, Natera is not limited to only the final, executed agreements themselves. As explained above, these core documents related to the acquisition of the very patents in suit are highly probative. Invitae cannot claim privilege, *see* Ex. 8 at 1, because Natera seeks communications between Invitae and third parties, and non-privileged internal communications among Invitae businesspeople. Nor can Invitae's counsel claim undue burden, *see id.*, because, when asked, counsel refused to identify, or even address, the potential volume of responsive documents. Vague assertions about the burdens of routine document collection and production are not a basis on which to withhold relevant discovery.

        Respectfully,

        */s/ Derek J. Fahnestock*

        Derek J. Fahnestock (#4705)

DJF/rah
Enclosures
cc:    All Counsel of Record (*via* CM/ECF and e-mail)