# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INVITAE CORPORATION,<br><br>    Plaintiff,<br><br>  v.<br><br>NATERA, INC.,<br><br>    Defendant. | C.A. No. 21-cv-669-GBW<br><br>**FILED UNDER SEAL** |
| INVITAE CORPORATION,<br><br>    Plaintiff,<br><br>  v.<br><br>NATERA, INC.,<br><br>    Defendant. | C.A. No. 21-cv-1635-GBW<br><br>**FILED UNDER SEAL** |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S JANUARY 24, 2023 DISCOVERY DISPUTE LETTER**

Dated: January 26, 2023

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market St., 12th Floor
Wilmington, DE 19801
(302) 777-0300
(302) 777-0301 (Fax)
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Edward R. Reines (admitted *pro hac vice*)
Derek C. Walter (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

*Attorneys for Plaintiff Invitae Corporation*

Dear Judge Williams:

Natera requests that Invitae be compelled to produce (1) all internal documents and correspondence and (2) every detail of negotiations regarding Invitae's acquisition of the Asserted Patents, despite Invitae having already produced the final purchase agreements for the same patents. Natera has no need for such burdensome and overbroad discovery, and its requests are disproportionate to the needs of the case under Rule 26.

**Natera's Overbroad Discovery Demand**

In its letter, Natera contends that it requires vast discovery of virtually every piece of information bearing the slightest relationship to Invitae's acquisition of the Asserted Patents, characterizing the acquisition history as a "complicated web" and implying that Invitae intends to deceive Natera by withholding discovery. D.I. 131 at 2. In a January 13, 2023 email on this issue, Natera made clear the sheer breadth of discovery it seeks here:

> We can talk about it further on the meet-and-confer, but as we've said multiple times, it is not just the negotiations with the other side that we are interested in. We want to understand what precipitated these transactions and, to understand that, we are also seeking the production of Invitae's internal documents and communications related to 

Ex. 1 (Jan. 13 D. Klein email) (emphasis in original). In other words, Natera seeks every last scrap of paper Invitae has ever generated regarding its acquisition of the Asserted Patents.

When Invitae pointed out that Natera was already in possession of the purchase agreements themselves—which establish precisely how Invitae valued the Asserted Patents—Natera doubled down, claiming that the purchase agreements did not reflect the "entirety of the relevant information pertaining to these transactions." *See* Ex. 2 (Jan. 7 D. Klein email). In its letter, Natera does not back away from its request for the "entirety" of the requested information. As documented herein, however, pursuant to Rule 26, Natera is not entitled to the "entirety" of such information, but only information proportional to the needs of the case.

**Natera Fully Understands The Transactions Involving The Patents-In-Suit**

According to Natera, Invitae obtained the Asserted Patents through a "complicated web of transactions," *see* D.I. 131 at 2, that can supposedly only be untangled by invasively plumbing the depths of Invitae's archives. This, however, is plainly incorrect, as despite Natera's allegations of convolution, Natera has been able to recount an accurate and detailed timeline of the asset acquisitions – ███████████████████████████████████████████ Natera's clear-eyed summary of the transactions in question confirms the sufficiency of Invitae's current production of the Good Start transaction ████████████████

Natera also asserts, for the first time, that it believes additional unproduced agreements exist, citing to an Invitae interrogatory response from early in the litigation. *See* Ex. 3 at 19-20. Crucially, when Natera asserts that Invitae's production thus far omits relevant agreements, the *only* support it cites is the theorized existence of these ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ If, as Natera's letter suggests, this is the only basis for Natera's motion, Natera ought to have pointed out the alleged discrepancy far earlier in the dispute resolution process for Invitae to correct, rather than escalating the issue to the Court before raising its specific concerns.

**Natera's Discovery Demand Is Disproportionate Pursuant To Rule 26**

Though acknowledging that it fully understands the relevant acquisition timeline and the financial terms, Natera complains that it nonetheless needs all the back-and-forth discussions and internal analyses that ultimately led to the final agreements at issue in this case, demanding that Invitae dig up additional documents from yet additional custodians beyond the extensive discovery Natera has already had.[1]

This Court, however, has repeatedly affirmed that "as a general rule license negotiations are less probative and more prejudicial than the licenses themselves," because "negotiation documents 'primarily add heat and not light to an already difficult judicial chore.'" *Sciele Pharma, Inc.* v. *Lupin, Ltd.*, C.A. No. 09-37-RBK-JS, 2013 WL 12161442, at *4 (D. Del. Jan. 31, 2013) (quoting *Charles E. Hill & Assocs., Inc.* v. *ABT Elecs., Inc.*, 854 F. Supp. 2d 427, 429 (E.D. Tex. 2012)); *see also Collabo Innovations, Inc.* v. *OmniVision Techs., Inc.*, No. 16-197-JFB-SRF, slip op. ¶ 14 (D. Del. May 17, 2018). Judge Noreika recently explained why this makes sense:

> CAO's refusal to produce communications relating to licensing negotiations and draft licensing agreements related to the patents-in-suit. I don't really see the relevance of negotiations of draft licenses given that, you know, you can ask for anything in a negotiation, that doesn't really matter, it only matters what you end up with, so why should licensing negotiations and draft licensing agreements be produced?

*CAO Lighting, Inc.* v. *GE Lighting, Inc. et al.*, C.A. No. 20-681-MN, D.I. 188 at 13:14-14:24 (D. Del. Dec. 16, 2021) ("I think it's too tangental[sic] at this point and too hypothetical."). Magistrate Judge Fallon echoed this reasoning, specifically noting the Rule 26 proportionality concern. *See Kajeet, Inc.* v. *NortonLifeLock, Inc.*, C.A. 20-1339-MN-SRF (D. Del. Jan. 24, 2022) (agreeing with Judge Noreika in *CAO Lighting* that "refusal to produce communications relating to license negotiations and draft licensing agreements related to the patents in suit was justified because such documents were irrelevant" and that such a request is "too tangential and hypothetical, not to mention overbroad and disproportionate under Rule 26.") In this case, Invitae has long since produced documents showing exactly how it values the Asserted Patents – the final purchase

---

[1] In this case, Invitae has already produced at great expense 20,143 documents from 8 different custodians encompassing 141,417 pages.

2

agreements themselves. Demanding that Invitae go beyond this and collect ephemeral and irrelevant negotiations and internal discussions is disproportionate.

Here, the burden concern that is at the core of Rule 26 proportionality is particularly acute due to further issues of expense and privilege. As Invitae has repeatedly informed Natera, the requested documents involved Invitae's attorneys, and any non-privileged documents that may exist are extensively intermingled with privileged ones. Given this intermingling, it would require an overly burdensome and entirely disproportionate effort on Invitae's part to sort through these documents and perform the necessary analysis to separate out the non-privileged material – all for materials that this Court has repeatedly held to be less probative and more prejudicial than the final purchase agreements Invitae has already produced.

Nor does Natera even seem interested in the entirety of overbroad discovery it is intent on forcing upon Invitae. Based on Natera's statements in its first paragraph on page 3, it seems Natera is most interested in documents showing (1) valuation of the Asserted Patents ***alone***, and (2) the reasons for the acquisition of the Asserted Patents. These narrowly focused issues can be easily handled through, for instance, a 30(b)(6) deposition. Natera has served a large number of 30(b)(6) topics on precisely this. Natera does not also need dragnet document discovery.

The cases Natera cites are inapplicable. In *Phoenix*, for instance, the movant sought production of negotiations with over thirty parties, when only one final agreement even existed. *Kajeet* presents a similar situation, where no license ever existed, merely a patentee sending demand letters. Absent a final agreement, such negotiations may be the only available support for how a patentee trying to license its patents values them. In the present case, however, documents that reflect the precise valuation of the patents by Invitae have already been produced, and all Natera seeks are tangential, hypothetical and less probative documents that are overly burdensome to produce. *BioDelivery* involves a partnership dispute in connection with licensing issues, and cannot be analogized to this case either. *MSTG* is even further off base, as in that case, the negotiations were put into question by an expert witness's error, which is not at all comparable to the current case. None of Natera's purported authorities actually address a situation comparable to the dispute at hand.

### To The Extent Natera Is Granted Further Discovery, It Should Be Limited To Two Discrete Categories

While Natera should in no circumstances be granted the overbroad discovery it seeks, the first paragraph of its letter on page 3 makes clear that it is interested primarily in just two discrete topics, as noted above. Accordingly, to the extent the Court is inclined to grant Natera further discovery, Invitae should be ordered to at most provide documents ***sufficient to show*** these two pieces of information, specifically, (1) Invitae's valuation of the Asserted Patents ***alone*** and (2) Invitae's reasons for their acquisition, to the extent such non-privileged documents exist.

3

                                              Respectfully submitted,

                                              /s/ Brian E. Farnan

                                              Brian E. Farnan

cc: Counsel of Record (Via E-Mail)