IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INVITAE CORPORATION,<br><br>                Plaintiff,<br><br>   v.<br><br>NATERA, INC.,<br><br>                Defendant. | C.A. No. 21-669-GBW<br><br>**UNSEALED ON 6/17/2024** |
| INVITAE CORPORATION,<br><br>                Plaintiff,<br><br>   v.<br><br>NATERA, INC.,<br><br>                Defendant. | C.A. No. 21-1635-GBW |

## MEMORANDUM ORDER

Before the Court is Defendant Natera, Inc.'s ("Natera") Motion to Strike (the "Motion") certain opinions in the rebuttal expert reports of Dr. Dan E. Krane. D.I. 196.[1] The Motion has been fully briefed. D.I. 197, D.I. 199, D.I. 201. The Court has determined that oral argument is not necessary. For the reasons set forth below, the Motion is denied.

**I.   BACKGROUND**

In these coordinated actions, Invitae alleges infringement of United States Patent Nos. 10,604,799 ("'799 patent"), 11,149,308 ("'308 patent"), and 11,155,863 ("'863 patent")

---

[1] Docket numbers identified herein refer to C.A. No. 21-669-GBW unless otherwise noted.

(collectively, the "Asserted Patents"). All three patents share a common written description. On October 18, 2022, this Court issued a Memorandum Opinion and corresponding Order construing the claim terms of the Asserted Patents. *See* D.I. 84, D.I. 85.

On November 14, 2022, this Court signed a scheduling order wherein the deadline for Final Infringement Contentions and Final Supplementation of Identification of Accused Products was December 19, 2022. D.I. 103, ¶ 3(e). The deadline for Final Invalidity Contentions and Final Supplementation of Invalidity References was January 5, 2023. *Id.*, ¶ 3(f). On May 3, 2023, this Court entered an amended scheduling order that extended the deadline of Opening, Rebuttal, and Reply expert reports to June 16, June 21, and August 11, 2023, respectively. D.I. 173 at 2.[2,3]

The dispute primarily concerns the "descriptions" and "combining" terms of the Asserted Patents. D.I. 197 at 1. The Asserted Patents discuss three types of genetic sequences—short "sequence reads," longer "contigs" assembled from those sequence reads, and a reference "genome." The Asserted Patents then require the creation of contig:reference "descriptions," read:contig "descriptions," and "combining" the two. *See, e.g.*, D.I. 1, Ex. 1 (the '799 patent), claim 1. Natera argued during claim construction that a "description" must provide information about the position and type of any discrepancies between the two sequences being compared, for example in the common "CIGAR string" bioinformatics format. *See* D.I. 72 at 70-72. The Court

---

[2] The amended scheduling order clarifies, apart from the deadlines specified in the amended order, "[a]ll other provisions of the Scheduling Order remain in effect." D.I. 166 at 2.

[3] Following the filing of this present Motion, the parties again filed a proposed order amending the scheduling order, D.I. 206. The amended scheduling order extended the close of expert discovery to September 8, 2023. D.I. 206 at 1. *See also id.* at 2 ("The purpose of the extension of the deadline for the Close of Expert Discovery, Case Event No. 1, is to allow for the timely deposition of experts who have already submitted expert reports and thus, notwithstanding the proposed amendment for Case Event No. 1, no additional discovery requests, notices, subpoenas, or expert reports are permitted absent further agreement of the parties or leave of Court on good cause shown.")

rejected Natera's construction, and instead held that the claim language provided "no requirement that 'contig:reference descriptions of mutations,' 'read:contig descriptions,' and 'read:reference descriptions' include the position and variant information." D.I. 84 at 15.

The accused portion of Natera's Signatera product uses a variant-calling software program called Sentieon TNseq. *See* D.I. 197, Ex. B ("'799 patent Infringement Contentions") at 29-36. The TNseq algorithm is identical in relevant part to two open-source software programs called HaplotypeCaller and Mutect2. *Id.* at 32 ("Signatera uses Sentieon's TNseq and DNAseq, an improved version of GATK Mutect2 and HaplotypeCaller and has identical mathematics as GATK's Mutect2 and HaplotypeCaller, respectively."). Natera contends that Invitae's infringement contentions have relied explicitly on information about the mechanics and functionality of HaplotypeCaller and Mutect2 to accuse Signatera of infringement. D.I. 197 at 1.

Natera asserts that "Invitae has proffered two theories for how Natera infringes the "descriptions" and "combining" claim elements." *Id.* One theory is that HaplotypeCaller and Mutect2's generation of a "likelihood score" (a statistical representation of how well a read matches a haplotype, a type of contig) based on alignments of reads to haplotypes is a "description," and that aggregating the likelihood scores with information garnered from aligning haplotypes to a reference genome satisfies the "combining" element. *Id.* (citing, e.g., '799 patent Infringement Contentions at 32-34). A second theory is that the software's use of a CIGAR string is a "read:contig description" and creating a read:reference CIGAR string based on the read:contig and contig:reference CIGAR strings satisfies the "combining" limitation. *Id.* (citing, *e.g.*, '799 patent Infringement Contentions at 33, 36).

Dr. Krane's report on infringement mentioned only the second (CIGAR-string) theory of infringement and did not mention likelihood scores or aggregating.[4] D.I. 197 at 1. The same day, Natera's invalidity experts served their opening reports "opining that prior-art HaplotypeCaller anticipated and rendered obvious the asserted claims, including by performing the likelihood-score and aggregating steps that Invitae contended are an infringement." *Id.*

In Dr. Krane's rebuttal report to Defendant's invalidity contentions, he opines that "the PairHMM alignment used to generate likelihood scores" for the HaplotypeCaller (2011) are "not read:contig descriptions." D.I. 197, Ex. H ("Krane Reb. Rpt.") at ¶ 69. *See also id.* at ¶¶ 161-63, 168-69, 173, 203. Natera argues that Dr. Krane's rebuttal report directly contradicts the first theory in Invitae's final infringement contentions. D.I. 197 at 2.

Invitae disagrees, contending that it "was clear in its validity interrogatory response that the 2011 and 2012 versions of HaplotypeCaller operated *differently* than the later version that Invitae cited for infringement." D.I. 199 at 3 (emphasis in original). Invitae argues that its validity contentions make clear that the earlier versions of HaplotypeCaller are not, in fact, descriptions. *Id.* Invitae argues that its identification of functionality absent in the 2011-2012 versions to "generate read:reference alignment by mapping read:haplotype alignment" disclosed its position that the 2011 HaplotypeCaller did not anticipate the "descriptions" and "combining" limitations. *Id.* (citing D.I. 199, Ex. 1 at 64).

---

[4] Neither party submitted the Opening Report to confirm or deny this fact, so the Court accepts it as true only for the purposes of this motion.

## II. DISCUSSION

Natera moves to strike those portions of the rebuttal expert reports of Invitae's expert Dr. Dan E. Krane that (1) offer validity theories that contradict Invitae's infringement contentions, and (2) disregard the Court's claim constructions. The Court takes each argument in turn.

### A. The Court Denies Natera's Motion to Strike Dr. Krane's Positions on The Basis of Inconsistencies.

The Federal Rules of Civil Procedure require an expert witness to provide a written report containing "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). If a party fails to provide this information, "the party is not allowed to use that information ... to supply evidence ... at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Dr. Krane's rebuttal expert reports are disclosures subject to Rule 26(a).

#### 1. Natera Has Not Demonstrated That Invalidity Contentions and Non-Infringement Contentions Must Be Consistent.

As an initial matter, Natera cites no precedent for the proposition that inconsistencies between validity contentions and infringement contentions are disallowed. *See* D.I. 198 at 1-3. Experts are generally not bound to follow every argument in initial contentions—contentions exist to disclose the scope of theories a party may rely upon in case. *See Astellas US LLC v. Hospira, Inc.*, No. 2022-1878, 2022 WL 17998229, at *5 n.6 (Fed. Cir. Dec. 30, 2022) ("[I]t is not unfair to expect that all possible infringement contentions be presented" at the case's outset). Given infringement contentions need not be self-consistent, the Court is unconvinced that infringement contentions and validity contentions must be consistent with each other. Indeed, the Court could imagine a scenario where the two being inconsistent is necessary. Suppose an alleged infringer argues its technology came first. If so, that accused infringer may wish to argue that one of two things must necessarily be true: if the patent reads on their product, the patent is invalid for

5

anticipation, but if the patent does not read on the accused product, the product would not infringe. *See Peters v. Active Mfg. Co.*, 129 U.S. 530, 537 (1889) ("That which infringes, if later, would anticipate, if earlier."). If the accused infringer wants to preserve both sides of this double bind argument, its invalidity contentions and infringement contentions would necessarily contradict— its infringement contentions would describe how the patent does not read on the technology, while the invalidity contentions would describe the opposite. The Court thus does not see anything inherently wrong with infringement and validity contentions being contradictory, at least at the initial stages of the case. Accordingly, the Court holds that Natera was not entitled to rely on each of Invitae's individual infringement contentions for Natera's own invalidity theories.[5]

Natera briefly argues that, in the alternative, Invitae's contentions were "boilerplate" and incapable of giving inadequate disclosure. D.I. 197 at 1. After reviewing the interrogatory responses and Dr. Krane's rebuttal report, the Court agrees that Invitae's contentions were hardly a model of clarity. While Natera may have been on notice that Invitae would assert that earlier versions of HaplotyeCaller were different than later or current versions, the validity contentions failed to put Natera on notice to that Invitae planned to assert the invalidity argument that likelihood scores are not "descriptions" and that using descriptions at different junctures in the variant-calling process does not satisfy the "combining" limitation. *See* D.I. 199, Ex. 1, at 60-64. Invitae's validity contentions did not mention "likelihood scores" or describe how changes in "key functionalities" made those likelihood scores not "descriptions." *See generally id.* Nor did Invitae elsewhere make clear what differences in HaplotypeCaller it would be asserting. *See generally id.* Accordingly, the Court finds that Invitae's contentions were inadequate.

---

[5] To be clear, Natera would be entitled to rely on the fact that at least one of those theories would be presented.

6

## 2. The *Pennypack* Factors Weigh Against Striking Dr. Krane's Theories.

This Court has applied the so-called *Pennypack* factors to "determine whether a failure to make timely disclosure of information required to be disclosed by court order or rule should lead to sanctions or should be regarded as harmless." *Lipocine Inc. v. Clarus Therapeutics, Inc.*, C.A. No. 19-622, 2020 WL 4794576, at *9 n.4 (D. Del. Aug. 18, 2020); *see id.* (declining to apply the *Pennypack* factors because the disclosure of "final invalidity contentions was not untimely").

The *Pennypack* factors are as follows:

> (1) the prejudice or surprise in fact of the party against whom the evidence would have been presented, (2) the ability of that party to cure the prejudice, (3) the extent to which the presentation of the evidence would disrupt the orderly and efficient trial of the case or other cases in the court, (4) bad faith or willfulness in failing to comply with the court's order, and (5) the importance of the excluded evidence.

*LabMD Inc. v. Boback*, 47 F.4th 164, 189 (3d Cir. 2022). The first *Pennypack* factor (prejudice or surprise) weighs slightly in favor of exclusion. Natera argues that it spent "two years developing an invalidity case based on Invitae's contention that HaplotypeCaller's use of likelihood scores infringes the asserted claims." D.I. 197 at 2. Specifically, Natera argues that they "retained consultants, scoured the prior art, produced source code, and took and defended deposition after deposition based on Invitae's consistent infringement position" and that Natera would suffer prejudice "if Invitae were permitted, through Dr. Krane, to contradict its own infringement theory at this late stage." *Id.* Natera's argument on prejudice relies on the proposition that Natera was entitled to rely on each of Invitae's infringement contentions when crafting an invalidity position. *See id.* It appears the heart of the prejudice Natera suffers from stems from its own mistaken beliefs, not Invitae's arguably vague validity disclosures. Natera was on notice of Invitae's positions regarding the 2011 and 2012 versions of HaplotypeCaller since April and has not made a timely motion clearly identifying any prejudice stemming solely from Invitae's earlier vague validity contentions. *Cf. Astellas Pharma Inc. et al. v. Actavis Elizabeth LLC, et al.*, Civil

7

Action No. 16- 905-JFB-CJB (D. Del. 2019) D.I. 438 ¶ 4 (holding that failing to identify specific prejudice in a timely manner justifies denying a motion to strike). Accordingly, the Court is unable to identify more than slight prejudice and surprise to Natera.

The second and third factor relate to prejudice and disruption to the trial. The trial date is currently set for March 25, 2024. D.I. 173 at 2. Expert discovery closed on September 1, 2023. *Id.* Natera asserts that the prejudice could not be cured, as it would require additional discovery and expert witness reports. D.I. 197 at 2. Invitae asserts that, if Natera believes the theory is contradictory to its infringement argument, that the proper relief would be proving that inconsistency at trial. Ultimately, the parties have five months until trial to attempt to cure any prejudice. To the extent some additional discovery would cure existing prejudice, Natera may seek leave promptly for additional discovery. Therefore, the Court finds that factors two and three weigh against exclusion.

The fourth factor asks if there was bad faith or willfulness on the part of Invitae. Even Natera agrees that bad faith cannot be found here, D.I. 197 at 3, but only argues that Invitae should have sought to amend its contentions if it sought to pursue this theory. Thus, factor four does not favor exclusion.

The fifth factor is the importance of the excluded evidence. The "exclusion of critical evidence is an extreme sanction," and Natera concedes Dr. Krane's theories are critical to Invitae's case. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791-92 (3d Cir. 1994); D.I. 197 at 3. The fifth factor weighs against exclusion.

Reviewing the factors together, the Court finds that the *Pennypack* factors weigh against striking Dr. Krane's opinions. Thus, the Court will turn to Natera's second argument.

**B.     The Court Denies Natera's Motion to Strike Dr. Krane's Positions on The Basis of Allegedly Contradicting the Court's Claim Construction**

Natera also seeks to strike Dr. Krane's opinions for contradicting the Court's claim constructions of "description" and "combining." D.I. 197 at 3.

With respect to the "description" terms, the Court has held that "there is no requirement that ['descriptions'] include the position and variant information, because the "patentee set forth a broad description of these terms that does not require detailed information about the attributes of the sequence read." D.I. 84 at 15.  Natera argues that Dr. Krane's opinion that likelihood scores are not descriptions because they do not include information about the position and type of variant in a sequence read violates this construction.  The dispute at claim construction was whether the "description" terms at issue needed to include express disclosure of the type and position of the mutation.  *See* D.I. 84 at 15.  The Court found that nothing in the claims requires express recognition of types and positions of mutations, largely because identification of mutations is recited in the dependent claims. *See* D.I. 84 at 15.  For example, this Court construed "read:contig descriptions" to mean "a description of a sequence read with reference to a contig" and rejected Natera's proposal "information including the position and the existence of matches, mismatches, deletions, and/or insertions for the bases in each sequence read relative to the contig, such as a CIGAR string." *Id.*

Dr. Krane asserts in his report that allegedly prior art CASAVA "performs alignment of reads to candidate indels, producing a likelihood score which merely describes the probability that the indel is present in the sample, rather than describing the reads with reference to the candidate indels such as showing matches and mismatches obtained through alignment." Krane Reb. Rpt., ¶ 87. *See also id.*, ¶¶ 161-162.  This Court agrees that "describing the reads with reference to the candidate indels such as showing matches and mismatches obtained through alignment" is

9

narrower than this Court's construction and not expressly required by the claim term. However, the claim construction does not expressly answer whether a likelihood score constitutes a description.[6] *See generally* D.I. 84. Dr. Krane cited the Court's construction and applied it to likelihood scores. D.I. 199, Ex. 3 ¶ 161. Whether this application was proper is an issue for summary judgment or trial, as his position is not clearly contradicted by the Court's construction. *Compare EMC Corp. v. Pure Storage, Inc.*, 154 F. Supp. 3d 81 (D. Del. 2016) (excluding an expert's opinions that "directly contradict the Court's construction"), *with Wi-LAN Inc. v. Sharp Corporation et al.*, 1-15-cv-00379 (D. Del. Nov. 7, 2018), D.I. 439 (refusing to exclude opinions not directly inconsistent with the Court's order, and instead finding that "opinions regarding whether the accused products fall within the scope of the claims as construed present issues that will be resolved either in connection with summary judgment or at trial.").

The same reasoning applies to the "combining terms." During the *Markman* hearing, in support of its winning argument that "combining" should be construed according to its plain and ordinary meaning, Invitae stated that combining "does comprise the universe of obtaining information from two datasets." D.I. 197, Ex. A at 95. Invitae also stated that "you don't have to take information from one set and the information from another set and put it in a single unitary file." D.I. 19, Ex. A at 94-95. In comparison, Dr. Krane states that "HaplotypeCaller (2011) does not combine the contig:reference descriptions with the read:contig descriptions simply because it considers the haplotype candidates and the PairHMM alignments at different junctures of the variant calling process." Krane Reb. Rpt., ¶ 168. The Court is unable to find, on the basis of the sparse briefing before it, that Invitae's arguments during the *Markman* hearing place limits on the

---

[6] Natera's position at claim construction, rejected by the Court, was significantly more specific than Dr. Krane's interpretation of the Court's claim construction here, so denial of Natera's earlier position does not require exclusion of Dr. Krane's opinions here. *See* D.I. 84 at 15.

10

plain meaning of "combining" that exclude Dr. Krane's opinions. For example, the plain meaning of "combining" could conceivably require using the two information sets together, without requiring the files to be merged.[7]

### C. CONCLUSION

For the foregoing reasons, the Motion is **DENIED**.

\* \* \*

**WHEREFORE**, this 14th day of November, 2023, **IT IS HEREBY ORDERED** that:

1. Defendant Natera Inc.'s Motion to Strike Certain Portions of Dr. Dan Krane's Rebuttal Report (D.I. 196) is DENIED.

2. Plaintiff Invitae Corp.'s Motion for Leave to File a Sur-Reply (D.I. 207) is DENIED.

3. Because the Memorandum Order is filed under seal, the parties shall meet and confer and, no later than November 21, 2023, submit a joint proposed redacted version. In the absence of a timely request compliant with applicable standards, the Court will unseal the entire Order.

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

---

[7] Natera's position at claim construction was that the two information sources had to be merged into a single file. *See* D.I. 84 at 18-19.