IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LABORATORY CORPORATION OF AMERICA HOLDINGS,<br><br>      Plaintiff,<br><br>  v.<br><br>NATERA, INC.,<br><br>      Defendant. | C.A. No. 21-669-GBW |
| LABORATORY CORPORATION OF AMERICA HOLDINGS,<br><br>      Plaintiff,<br><br>  v.<br><br>NATERA, INC.,<br><br>      Defendant. | C.A. No. 21-1635-GBW |

## MEMORANDUM ORDER

"In these two actions filed by [] Invitae Corporation ('Invitae') against Defendant Natera, Inc. ('Natera'), [Plaintiff Laboratory Corporation of America Holdings ('Labcorp')] alleges infringement of United States Patent Nos. 10,604,799 (''799 patent'), 11,149,308 (''308 patent'), and 11,155,863 (''863 patent')." *Invitae Corp. v. Natera, Inc.*, No. CV 21-1635-GBW, 2022 WL 10465138, at *1 (D. Del. Oct. 18, 2022).[1]

---

[1] In April 2025, Labcorp was "substituted for Invitae Corporation as Plaintiff pursuant to Fed. R. Civ. P. 25(c)[.]" D.I. 269 ¶ 1. Unless otherwise noted, references to docket cites refer to C.A. No. 21-1635.

Pending before the Court is Defendant Natera, Inc.'s Motion to Exclude under *Daubert* Expert Testimony That Fails to Apply the Court's Claim Constructions (D.I. 190) (the "Motion"), which has been fully briefed (D.I. 191; D.I. 222; D.I. 242). For the following reasons, the Court denies the Motion.

I.   **BACKGROUND**

A.   **The Asserted Patents**

The '799 patent, '308 patent, and '863 patent (collectively, the "Asserted Patents") "share a common written description" and "generally relate to the field of sequence assembly." 2022 WL 10465138, at *1. "The claimed invention enables the identification of mutations with positional accuracy in a computationally tractable way." *Id.*

"On October 18, 2022, this Court issued a Memorandum Opinion and corresponding Order construing the claim terms of the Asserted Patents." D.I. 244 at 2. Specifically, the Court construed the following claim terms of the Asserted Patents as follows (D.I. 62 at 1-3):

| **Claim Term** | **Court's Construction** |
|---|---|
| **Disputed Constructions** ||
| "sequence reads" | raw reads as generated by the sequencing instrument[2] |
| "a plurality of sequence reads" (the '799 patent)<br><br>"the plurality of sequence reads" (the '863 patent)<br><br>"the sequence reads" (the '308 patent) | "sequence reads" to be defined as above, no other construction necessary |

---

[2] On November 1, 2022, Invitae "request[ed] clarification and/or reconsideration of this Court's construction of the term 'sequence reads[.]'" D.I. 75 at 1. This request was denied. *See* D.I. 160 at 3 ("[T]he Court's Opinion about 'sequence reads' is unambiguous, and Invitae's motion for clarification is denied.").

2

| Claim Term | Court's Construction |
|---|---|
| "said plurality of sequence reads" (the '799 patent)<br><br>"the plurality of sequence reads" (the '799 patent) | "sequence reads" to be defined as above, no other construction necessary |
| "contig:reference descriptions of mutations" ('799 patent)<br><br>"contig-to-reference descriptions of mutations" ('863 patent) | a description of a mutation in a contig as it exists in the nucleic acid with reference to the genome |
| "reference alignment(s)" ('308 patent) | placement in a reference genome |
| "read:contig descriptions" ('799 patent)<br><br>"read-to-contig descriptions" ('863 patent) | a description of a sequence read with reference to a contig |
| "sequence read alignments" ('308 patent) | placements of sequence reads |
| "read:reference descriptions" ('799 patent)<br><br>"read-to-reference descriptions" ('863 patent) | description of a sequence read with reference to the reference genome |
| "combining the contig:reference descriptions with the read:contig descriptions" (the '799 patent)<br><br>"combining the reference alignment and the sequence read alignments" (the '308 patent) | no construction necessary. Plain and ordinary meaning. |
| **Agreed-Upon Construction** ||
| "genotyping" (the '308 patent) | assigning a genotype to |

**B.   Defendant's Motion**

Defendant's Motion challenges the expert testimony of Dr. Joshua P. Earl ("Dr. Earl") and Dr. Daniel E. Krane ("Dr. Krane").

3

Specifically, Defendant challenges testimony found in:

1. The Expert Report of Joshua P. Earl (ECF No. 203-1 at PageID 7581-7598) ("Dr. Earl's Opening Report" or the "Earl Opening Report");[3]

2. The Reply Expert Report of Joshua P. Earl, Ph.D, to Rebuttal Expert Report of Istvan Albert, Ph.D (ECF No. 203-1 at PageID 7819-7821) ("Dr. Earl's Reply Report" or the "Earl Reply Report");[4]

3. The Expert Report of Dan E. Krane (ECF No. 203-1 at PageID 7426-7506) ("Dr. Krane's Opening Report" or the "Krane Opening Report");[5] and

4. The Rebuttal Expert Report of Dan E. Krane to the Opening Expert Report of Michael Metzker, PhD (ECF No. 203-1 at PageID 7691-7772) ("Dr. Krane's Rebuttal Report" or the "Krane Rebuttal Report").[6]

## II.    LEGAL STANDARD

### A.    Fed. R. Evid. 702

"Federal Rule of Evidence 702 governs the admissibility of expert testimony." *EcoFactor, Inc. v. Google LLC*, ___ F.4th ___, No. 2023-1101, 2025 WL 1453149, at *3 (Fed. Cir.

---

[3] As to Dr. Earl's Opening Report, Defendant challenges Paragraphs 12, 15-16, 19-20, 22, 26-27, 29, and 38-42. D.I. 190 ¶ 1.

[4] As to Dr. Earl's Reply Report, Defendant challenges Paragraph 2. D.I. 190 ¶ 1.

[5] As to Dr. Krane's Opening Report, Defendant challenges Paragraphs 74, 79, 82, 88, 94, 97, 101, 103, 105, 109, 159, 165, 186, 190, 237, 245, and 251. D.I. 190 ¶ 1.

[6] As to Dr. Krane's Rebuttal Report, Defendant challenges Paragraphs 66-72, 159-176, 237-238, 272-273, 369, 372, 496, 499-501, 540, 573, 619, 717-718, 740, 822, 827, 932, 1035-1036, 1142, and 1247. D.I. 190 ¶ 2. In a separate motion (D.I. 172), Defendant moved to strike various portions of Dr. Krane's Rebuttal Report. *See* D.I. 172-1 at 1 (proposed order to strike Paragraphs 69, 87, 161-163, 168, 173, 203, 205, 237, 240, 496, 499-500, 540, 573, 575, 615-616, 619, 714-715, 717-719, 751, 784, 786, 932, 963, 1033, 1035, 1066, and 1244 of Dr. Krane's Rebuttal Report); *see also* D.I. 191 at 1 n.1. The Court denied the preceding motion (D.I. 172). *See* D.I. 244 at 11.

May 21, 2025) (en banc). In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993), the Supreme Court held that Federal Rule of Evidence 702 creates "a gatekeeping role for the [trial] judge" in order to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."[7] "Because expert testimony 'can be both powerful and quite misleading,' the district court's gatekeeping function under Rule 702 is an important one." *Trudell Med. Int'l Inc. v. D R Burton Healthcare, LLC*, 127 F.4th 1340, 1349 (Fed. Cir. 2025) (quoting *Daubert*, 509 U.S. at 595).

Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. As the Third Circuit has explained:

> Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit. Qualification refers to the requirement that the witness possess specialized expertise. We have . . . [held] that a broad range of knowledge, skills, and training qualify an expert. Secondly, the testimony must be reliable; it must be based on the methods and procedures of science rather than on subjective belief or unsupported speculation; the expert must have good grounds for his o[r] her belief. In sum, *Daubert* holds that an inquiry into the reliability of scientific evidence under Rule 702 requires a determination as to its scientific validity. Finally, Rule 702 requires that the expert testimony . . . must be relevant for the purposes of the case and must assist the trier of fact.

---

[7] "This gatekeeping function is necessarily 'flexible' . . . granting district courts 'latitude in deciding *how*' the[] [Rule 702] requirements are met." *Cohen v. Cohen*, 125 F.4th 454, 460 (3d Cir. 2025) (first quoting *Daubert*, 509 U.S. at 594; then quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). For example, "a district court 'may conditionally admit [] expert testimony subject to a later Rule 702 determination.'" *Id.* (quoting *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 833 (3d Cir. 2020)).

5

*Schneider v. Fried*, 320 F.3d 396, 404-05 (3d Cir. 2003) (cleaned up); *see Cohen*, 125 F.4th at 460-65 (noting the same trilogy).

"In 2023, Rule 702 was amended to clarify that the proponent of expert testimony bears the burden of establishing its admissibility and to emphasize that an expert's opinion must stay within the bounds of a reliable application of the expert's basis and methodology." *EcoFactor*, 2025 WL 1453149, at *3. "Though the burden is on the proponent, [the Third Circuit] ha[s] said 'Rule 702 ... has a liberal policy of admissibility.'" *Sec'y United States Dep't of Lab. v. Nursing Home Care Mgmt. Inc.*, 128 F.4th 146, 162 (3d Cir. 2025) (some alterations in original) (quoting *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008)).

"Determinations of admissibility, which fall within the gatekeeping role of the court, are separate from determinations of weight and credibility, which are within the province of the jury in a jury case." *EcoFactor*, 2025 WL 1453149, at *4. "[T]he question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court. Indeed, '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Id.* (alterations in original) (quoting *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015)); *see Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 83 (3d Cir. 2017) (quoting *Daubert*, 509 U.S. at 596).

## III.  DISCUSSION

### A.  The Court Does Not Exclude Dr. Earl's Challenged Testimony

As explained below, the Court denies Defendant's request to exclude "Dr. Earl's opinions referring to 'sequence reads' and 'combining' and Dr. Krane's reliance on those opinions." D.I. 190 ¶ 1.

a.     **Summary of Pertinent Facts**

In his own words, Dr. Earl "was asked to describe the operation and functionality of the TNseq variant calling process based on [his] review of Sentieon source code and the Mutect2 variant calling process based on the public GATK 4.2.0.0 source code." Earl Opening Report ¶ 12.[8] Thus, Dr. Earl submitted a "report detail[ing] [his] technical opinions relating to the operation of source code produced by Sentieon in this litigation and the operation of GATK (version 4.2.0.0) source code." *Id.* ¶ 2.

Dr. Earl asserts that "whether TNseq and Mutect2 practice any claims of any patents" is "outside of the scope of [his] report," because he "was not asked to provide [his] opinion on any aspect of any patents." *Id.* ¶ 13. Plaintiff agrees. *See* D.I. 222 at 31-33 ("Dr. Earl, however, is strictly a source code expert. His role was solely to analyze source code and explain how it worked, not to render conclusions about infringement. . . . Dr. Earl's role in the case, however, was solely to assist with the analysis of complex source code as an aid to understanding its operation. . . . Consistent with this, nowhere does Dr. Earl's report mention infringement, anticipation, obviousness, or any other issue that would implicate a need to understand the Court's constructions.").

Portions of Dr. Earl's Opening Report include language that is also found in the Asserted Patents. *Compare* Earl Opening Report ¶ 15 ("For each region, *sequence reads* are assembled

---

[8] The parties' briefing does not identify what "source code" means in this context. "'Source code' is generally understood to mean 'a computer program in its original programming language (such as FORTRAN or C) before translation into object code usually by a compiler.'" *FastTrac Transp., LLC v. Pedigree Techs., LLC*, No. 3:22-CV-53, 2023 WL 12088783, at *2 n.1 (D.N.D. July 7, 2023) (quoting *Source code*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/source%20code (accessed June 27, 2023)); *see Pyrotechnics Mgmt., Inc. v. XFX Pyrotechnics LLC*, 38 F.4th 331, 336 n.5 (3d Cir. 2022) ("'Source code' refers to the human-readable statements—written in a syntax defined by a programming language like JavaScript or Python—that make up a computer program.").

. . . .") (emphasis added), *with supra* note 2 (discussing the Court's construction of the term "sequence reads"). Dr. Earl testified that the Earl Opening Report was drafted before Dr. Earl was familiar with the Court's claim construction rulings. *See* ECF No. 203-1 at PageID 7540 ("Q. And so when you were drafting this report, had you considered the court's claim construction order about the term, sequence reads? A. Yeah, so, I think you didn't get picked up there. At the time, no, I don't believe I had. Q. So in your opening report, when you use the term, sequence reads, you are not applying the court's claim [] construction order, right? A. No, like, no, I wasn't aware of it at the time, and so I did not have that information."); *see id.* at PageID 7540-7541 ("Q. Dr. Earl, you testified a few moments ago that you learned when you were reading Dr. Albert's report that the court construed sequence reads as [] something like, reads as they come off the DNA sequencer, right? MR. CONSTANT: Objection, form. A. Right, yes. . . . Q. To be clear, I am, in that sentence that we've been focusing on, replacing sequence reads with one of the requirements of the court's claim construction. And so essentially, what I'm asking you is when you use the term sequence reads here, you're not offering any opinion that Sentieon is performing any analysis on sequence reads as it's been construed by the court, right? MR. CONSTANT: Objection, form. A. Right, as, you know, as I was not aware of it when I was writing this [] report, so.").

Defendant contends that "Dr. Earl's opinions referring to 'sequence reads' and 'combining,' along with Dr. Krane's reliance on those opinions, should be precluded because Dr. Earl did not apply the Court's claim constructions." D.I. 191 at 3 (capitalization and emphasis altered). This is so, according to Defendant, for two reasons.

First, Defendant asserts that "Dr. Earl should not be allowed to use claim language to describe the accused source code when he admits that he has no opinions on how the language of

8

the patent claims should be interpreted or applied to the accused product." *Id.* at 3.[9] Second, Defendant asserts that "Dr. Earl's supposedly coincidental invocation of claim language . . . renders his testimony an improper infringement opinion in the guise of a neutral analysis of the source code that Dr. Krane relies on to bolster his own infringement opinions." D.I. 191 at 4.[10]

Plaintiff counters that Dr. Earl has not proffered infringement opinions, let alone improper infringement opinions. *See* D.I. 222 at 33 ("Dr. Earl's role in the case, however, was solely to assist with the analysis of complex source code as an aid to understanding its operation. . . . Consistent with this, nowhere does Dr. Earl's report mention infringement[.] . . . In any event, while Dr. Earl was not asked to present opinions that required an understanding of the Court's constructions, his testimony nonetheless shows that he understood 'sequence reads' and 'combining' consistent with the Court's constructions."), 34 ("[Dr. Earl] did not improperly use the claim terms and did not improperly propose infringement arguments based on erroneous constructions."). Plaintiff also counters that "while Dr. Krane relied upon Dr. Earl to assist with understanding relevant source code, he did not simply defer to Dr. Earl's analysis on any issue,

---

[9] In support of this contention, Defendant cites *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc). *See* D.I. 191 at 4. The Federal Circuit "determined to hear th[e] [*Phillips*] case *en banc* in order to resolve issues concerning the construction of patent claims raised by the now-vacated panel majority and dissenting opinions." *Phillips v. AWH Corp.*, 376 F.3d 1382, 1382 (Fed. Cir. 2004); *see* Hon. Kimberly A. Moore, *Markman Eight Years Later: Is Claim Construction More Predictable?*, 9 Lewis & Clark L. Rev. 231, 247 n.7 (2005).

[10] In support of this contention, Defendant again cites the Federal Circuit's en banc *Phillips*' opinion. *See* D.I. 191 at 5. Defendant also cites *MBO Lab'ys, Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1329 (Fed. Cir. 2007) for the proposition that patent infringement analysis entails two steps. *See* D.I. 191 at 6.

9

but rather reviewed source code by himself, along with numerous other documents to support his infringement opinion." *Id.* at 35.

**b.    Analysis**

In this instance, the parties do not dispute that "an expert witness is not allowed to deviate from the Court's claim construction[.]" *Cirba Inc. v. VMware, Inc.*, No. CV 19-742-GBW, 2023 WL 3151853, at *8 (D. Del. Apr. 18, 2023); *see Int'l Bus. Machines Corp. v. Zynga Inc.*, No. 22-cv-590-GBW, D.I. 538 at 38 (D. Del. Aug. 29, 2024) ("Dr. Bennett may not apply a claim construction to the jury different from the claim construction of the Court."). Nor do the parties dispute that "[i]t has generally been held to be permissible for a technical expert in a patent case to provide an opinion on questions such as whether an asserted patent claim, as construed by the court, reads on an accused product[.]" *Sonos, Inc. v. D & M Holdings Inc.*, 297 F. Supp. 3d 501, 513 (D. Del. 2017) (collecting cases).

Instead, the parties' dispute regards whether it is impermissible for a witness, who is purportedly testifying about the accused system/method itself and not offering opinions on patent infringement or invalidity, to colloquially invoke words that the Court has construed.[11] The parties have not identified legal authority that clearly addresses the issue.

---

[11] Having considered the parties' briefing, and having considered Dr. Earl's deposition testimony, the Court is not convinced by Defendant's assertion that "[w]hile Dr. Earl purports to not be offering an infringement opinion, that is exactly what he is doing[.]" D.I. 191 at 6.

Outside the patent context, courts have been mindful that a single word can carry both colloquial meanings and specialized meanings that are legally significant.[12] Courts have also been mindful that jurors may be led astray by such words.[13]

In this instance, the Court finds plausible Defendant's assertion that "permitting Dr. Earl's supposedly coincidental use of the claim terms . . . is highly prejudicial." D.I. 191 at 6. For example, despite Dr. Earl's testimony that he is not proffering infringement testimony, jurors might assume that the testimony found in Paragraph 15 of Dr. Earl's Opening Report opines on whether accused systems/methods practice the "sequence reads" limitations.

Defendant's assertion, however, is a "cursory argument[]" that it fails to "fully develop[]." *ECB USA, Inc. v. Savencia, S.A.*, No. CV 19-731-RGA, 2020 WL 5369076, at *4 (D. Del. Sept. 8, 2020) ("As a general prudential rule, courts only decide issues that are fairly and fully presented."). Thus, at this time, the Court denies Defendant's request to exclude Dr. Earl's testimony. *See Chervon (HK) Ltd. v. One World Techs., Inc.*, No. CV 19-1293-GBW, D.I. 470 at 38 (D. Del. Jan. 13, 2025).

---

[12] *Cf. Brees v. Jefferson Cnty.*, No. C07-5000BHS, 2008 WL 336787, at *1 (W.D. Wash. Feb. 5, 2008) ("County Defendants seek to exclude lay testimony regarding whether retaliation occurred because 'retaliation' is a term of art. The testimony of lay witnesses at trial is expected to reflect the distinction between lay and expert witnesses recognized by the Federal Rules of Evidence, and lay witnesses will not be permitted to opine on whether Defendants are liable for Plaintiff's various legal claims. To this extent, the motion is granted. To the extent that lay witnesses may seek to testify about 'retaliation' in the colloquial sense, the motion is denied.").

[13] *Cf. Martinez v. Union Pac. R. Co.*, 714 F.2d 1028, 1033 (10th Cir. 1983) ("This legal term of art [i.e., 'joint venture'] colloquially might have been construed by the jury to apply to a group of youths driving around for several hours in search of entertainment. Left without any instruction by the court as to the definition of a joint venture under Wyoming law, the jury may have concluded that, even if it found that Litecky was the driver, his negligence had to be imputed to Martinez and Martin. In that situation, although the jury may not have found Martinez and Martin to have been at fault in their own right, the jury erroneously may have imputed Litecky's negligence to them.").

Nevertheless, in the interest of narrowing the parties' disputes, within fourteen (14) days of entry of this Memorandum Order, the parties shall meet and confer to discuss the feasibility of a stipulation whereby, to ameliorate the possibility of juror confusion, Dr. Earl would provide the same substantive testimony without invoking the challenged words that the Court has construed. *Cf. Masimo Corp. v. Philips Elec. N. Am. Corp.*, 62 F. Supp. 3d 368, 377 (D. Del. 2014) (noting that at trial experts are not limited verbatim to their reports and further noting "the 'reasonable elaboration' the Court allows an expert to use in her trial testimony beyond what the expert disclosed in her pretrial expert report").[14]

## B. The Court Does Not Exclude Dr. Krane's Challenged Testimony

As explained below, the Court denies Defendant's request to exclude "Dr. Krane's opinions that the asserted prior art does not invalidate the asserted claims where they are [purportedly] inconsistent with the Court's constructions of the claim terms 'descriptions' and 'combining.'" D.I. 190 ¶ 2.

### a. Summary of Pertinent Facts

Defendant contends that "Dr. Krane's opinions that the Asserted Prior Art does not invalidate the Asserted Claims should be excluded where they are inconsistent with the Court's claim construction rulings." D.I. 191 at 6 (capitalization and emphasis altered). This is so, according to Defendant, because "Dr. Krane wholesale ignores the Court's claim construction rulings" when "opin[ing] that the prior art analyzed in Dr. Metzker's Opening Report does not

---

[14] To the extent that the meet and confer does not resolve this matter, then by no later than seven (7) days after their meet and confer, the parties shall submit a joint letter, not to exceed three (3) pages, that (1) identifies the specific issues that remain in dispute; (2) sets forth each party's position on each dispute and the legal authority for each party's respective position; and (3) explains why the parties were unable to reach agreement on each issue.

12

invalidate the Asserted Claims because they purportedly do not satisfy the 'descriptions' and 'combining' claim terms." *Id.* at 6

As to the "descriptions" term, Defendant asserts that Dr. Krane's "arguments with respect to [certain] [] prior art references" "squarely contradict[] the Court's construction of 'descriptions' as not requiring the inclusion of 'position and variant information.'" *Id.* at 7 (emphasis removed).

As to the "combining" term, Defendant asserts that Dr. Krane's "arguments with respect to [certain] prior art references" "runs contrary to this Court's decision to reject Natera's [proffered] construction that 'combining' means 'merging.'" *Id.* at 7-8.

**b.  Analysis**

As noted earlier, *see supra* note 6, Defendant filed a separate motion to strike against Dr. Krane's Rebuttal Report. *See* D.I. 172 (Motion to Strike Certain Opinions of Dr. Dan E. Krane).[15] In support of that motion to strike, Defendant asserted that "Dr. Krane's opinions contradict the Court's claim construction." D.I. 173 at 3 (capitalization and emphasis altered). Specifically, Defendant asserted that Dr. Krane's opinions regarding the "descriptions" term and the "combining" term were "inconsistent with the Court's claim construction." D.I. 173 at 3; *see* D.I. 244 at 9 ("Natera also seeks to strike Dr. Krane's opinions for contradicting the Court's claim constructions of 'description' and 'combining.'").

When "den[ying] [Defendant]'s motion to strike Dr. Krane's positions on the basis of allegedly contradicting the Court's claim construction," D.I. 244 at 9 (capitalization and emphasis altered), the Court found that the challenged testimony of Dr. Krane "is not clearly contradicted by the Court's construction." *Id.* at 10. Moreover, the Court ruled that "[w]hether [Dr. Krane's]

---

[15] In other words, the pending Motion moves to exclude testimony from the same report that Defendant moved to strike in a separate motion. *Compare* ECF No. 173-2 at PageID 5293, *with* ECF No. 203-1 at PageID 7691.

13

application [of the Court's claim construction ruling] was proper is an issue for summary judgment or trial[.]" *Id.*

A *Daubert* motion is not a vehicle to receive de novo review of an issue the Court has already ruled on. *Cf. Inventio AG v. Thyssenkrupp Elevator Corp.*, No. CV 08-874-RGA, 2014 WL 554853, at *2 n.1 (D. Del. Feb. 6, 2014) ("The Defendant raised the following arguments in both this Daubert Motion and its motion to strike damages. . . . As the Court already ruled on these issues they are now moot and will not be further discussed."). Importantly, "[e]ffective trial court management requires a presumption against reconsideration of interlocutory decisions." *In re Anthanassious*, 418 F. App'x 91, 96 (3d Cir. 2011) (nonprecedential); *see Black Bear Energy Servs., Inc. v. Youngstown Pipe & Steel, LLC*, No. CV 15-50, 2021 WL 4751746, at *4 (W.D. Pa. Oct. 12, 2021).[16] In this instance, Defendant "provides no persuasive basis for why the Court should reevaluate its decision" "den[ying] [Defendant]'s motion to strike Dr. Krane's positions on the basis of allegedly contradicting the Court's claim construction." *GN Netcom, Inc. v. Plantronics, Inc.*, No. CV 12-1318-LPS, 2017 WL 4400780, at *1 (D. Del. Oct. 2, 2017) (first quote); D.I. 244 at 9 (second quote) (capitalization and emphasis altered).

Thus, "[t]he Court adopts its earlier [O]rder[] on this point; no further reconsideration is called for." *10X Genomics, Inc. v. Bruker Spatial Biology, Inc.*, No. 21 C 653, 2024 WL 5201115, at *10 (D. Del. Dec. 23, 2024).

## IV. CONCLUSION

For the foregoing reasons, the Court denies the Motion (D.I. 190).

\* \* \*

---

[16] "Discovery rulings are interlocutory in nature." *Glover v. F.D.I.C.*, 543 F. App'x 149, 151 (3d Cir. 2013) (nonprecedential) (quoting *Lusardi v. Xerox Corp.*, 747 F.2d 174, 178 (3d Cir. 1984)).

14

WHEREFORE, at Wilmington this 5th day of June 2025, **IT IS HEREBY ORDERED** that the Motion (D.I. 190) is **DENIED**.

_____
GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE