IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LABORATORY CORPORATION OF AMERICA HOLDINGS,<br><br>     Plaintiff,<br><br>  v.<br><br>NATERA, INC.,<br><br>     Defendant. | C.A. No. 21-669-GBW |
| LABORATORY CORPORATION OF AMERICA HOLDINGS,<br><br>     Plaintiff,<br><br>  v.<br><br>NATERA, INC.,<br><br>     Defendant. | C.A. No. 21-1635-GBW |

## MEMORANDUM ORDER

"In these two actions filed by [] Invitae Corporation ('Invitae') against Defendant Natera, Inc. ('Natera'), [Plaintiff Laboratory Corporation of America Holdings ('Labcorp')] alleges infringement of United States Patent Nos. 10,604,799 (''799 patent'), 11,149,308 (''308 patent'), and 11,155,863 (''863 patent')." *Invitae Corp. v. Natera, Inc.*, No. CV 21-1635-GBW, 2022 WL 10465138, at *1 (D. Del. Oct. 18, 2022).[1]

---

[1] In April 2025, Labcorp was "substituted for Invitae Corporation as Plaintiff pursuant to Fed. R. Civ. P. 25(c)[.]" D.I. 269 ¶ 1. Unless otherwise noted, references to docket cites refer to C.A. No. 21-1635.

Pending before the Court is Plaintiff Invitae Corporation's Motion for Summary Judgment and *Daubert* Motion to Exclude Expert Testimony (D.I. 186) (the "Motion"), which has been fully briefed (D.I. 187; D.I. 218; D.I. 237). For the following reasons, the Court denies-in-part the Motion.[2]

I.  **BACKGROUND**

A.  **The Asserted Patents**

The '799 patent, '308 patent, and '863 patent (collectively, the "Asserted Patents") "share a common written description" and "generally relate to the field of sequence assembly." 2022 WL 10465138, at *1. "The claimed invention enables the identification of mutations with positional accuracy in a computationally tractable way." *Id.*

B.  **Plaintiff's Motion**

Plaintiff's Motion challenges the expert testimony of Dr. Metzker and Dr. Albert. *See* D.I. 186-1 ¶¶ 3-4.

Specifically, Plaintiff challenges: (1) "Dr. Metzker's opinions as an expert on invalidity and infringement" and (2) "Dr. Albert's opinions as an expert on invalidity and infringement." *Id.*[3] The Court will refer to the preceding opinions collectively as the "Metzker-Albert Testimony."

---

[2] This Memorandum Order addresses a portion of the Motion – a *Daubert* Motion challenging the opinions of Dr. Michael Metzker ("Dr. Metzker") and Dr. Istvan Albert ("Dr. Albert"). The Court will separately address the remaining portions of the Motion.

[3] Plaintiff does not clearly identify the specific "invalidity and infringement" opinions it seeks to exclude. *See, e.g.*, D.I. 186-1 ¶¶ 3-4 (providing zero citations); D.I. 187 at 26 (asserting, with zero citations, that "the relevant portions of Drs. Metzker's and Albert's opinions should be excluded under *Daubert*"). Parties that fail to adequately identify the expert testimony that they seek to exclude do so at their own peril. *See Sonos, Inc. v. D & M Holdings Inc.*, 297 F. Supp. 3d 501, 511 (D. Del. 2017) ("Sonos's contention that 'Dr. Kesan's improper legal opinions are scattered throughout various sections and appendices of the Kesan Report,' Dkt. No. 336, at 9, is too general

2

Based on Plaintiff's opening brief (D.I. 187), testimony relevant to Plaintiff's Motion is found in:

1. The Opening Expert Report of Michael Metzker, Ph.D. Regarding Invalidity of U.S. Patent Nos. 10,604,799; 11,155,863; and 11,149,308 (D.I. 188-14);

2. Dr. Metzker's deposition testimony (D.I. 188-10);

3. The Opening Expert Report of Istvan Albert, Ph.D Regarding U.S. Patent Nos. 10,604,799, 11,149,308, and 11,155,863 (D.I. 188-13); and

4. Dr. Albert's deposition testimony (D.I. 188-11).

## II.   LEGAL STANDARD

### A.   Fed. R. Evid. 702

"Federal Rule of Evidence 702 governs the admissibility of expert testimony." *EcoFactor, Inc. v. Google LLC*, 137 F.4th 1333, 1338 (Fed. Cir. 2025) (en banc). In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993), the Supreme Court held that Federal Rule of Evidence 702 creates "a gatekeeping role for the [trial] judge" in order to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."[4] "Because expert testimony 'can be both powerful and quite misleading,' the district court's gatekeeping function

---

a complaint for the Court to address in any meaningful way. Does Sonos expect the Court to review all 1315 pages of Dr. Kesan's Report and Rebuttal Report in search of the 'improper legal opinions' that are assertedly 'scattered throughout various sections and appendices' of those reports? Without any more specificity than that, the Court is unable to address Sonos's objection and therefore deems that objection waived."); *see also* D. Del. LR 7.1.3(c)(1) ("The opening [] [] brief shall contain . . . . (G) A short conclusion stating the precise relief sought.").

[4] "This gatekeeping function is necessarily 'flexible' . . . granting district courts 'latitude in deciding *how*' the[] [Rule 702] requirements are met." *Cohen v. Cohen*, 125 F.4th 454, 460 (3d Cir. 2025) (first quoting *Daubert*, 509 U.S. at 594; then quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). For example, "a district court 'may conditionally admit [] expert testimony subject to a later Rule 702 determination.'" *Id.* (quoting *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 833 (3d Cir. 2020)).

3

under Rule 702 is an important one." *Trudell Med. Int'l Inc. v. D R Burton Healthcare, LLC*, 127 F.4th 1340, 1349 (Fed. Cir. 2025) (quoting *Daubert*, 509 U.S. at 595).

Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. As the Third Circuit has explained:

> Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit. Qualification refers to the requirement that the witness possess specialized expertise. We have . . . [held] that a broad range of knowledge, skills, and training qualify an expert. Secondly, the testimony must be reliable; it must be based on the methods and procedures of science rather than on subjective belief or unsupported speculation; the expert must have good grounds for his o[r] her belief. In sum, *Daubert* holds that an inquiry into the reliability of scientific evidence under Rule 702 requires a determination as to its scientific validity. Finally, Rule 702 requires that the expert testimony . . . must be relevant for the purposes of the case and must assist the trier of fact.

*Schneider v. Fried*, 320 F.3d 396, 404-05 (3d Cir. 2003) (cleaned up); *see Cohen*, 125 F.4th at 460-65 (noting the same trilogy).

"In 2023, Rule 702 was amended to clarify that the proponent of expert testimony bears the burden of establishing its admissibility and to emphasize that an expert's opinion must stay within the bounds of a reliable application of the expert's basis and methodology." *EcoFactor*, 137 F.4th at 1339. "Though the burden is on the proponent, [the Third Circuit] ha[s] said 'Rule 702 ... has a liberal policy of admissibility.'" *Sec'y United States Dep't of Lab. v. Nursing Home Care Mgmt. Inc.*, 128 F.4th 146, 162 (3d Cir. 2025) (some alterations in original) (quoting *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008)).

4

"Determinations of admissibility, which fall within the gatekeeping role of the court, are separate from determinations of weight and credibility, which are within the province of the jury in a jury case." *EcoFactor*, 137 F.4th at 1339. "[T]he question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court. Indeed, '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Id.* at 1340 (alterations in original) (quoting *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015)); *see Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 83 (3d Cir. 2017) (quoting *Daubert*, 509 U.S. at 596).

**B.     Fed. R. Evid. 703**

"In *Daubert* . . ., the Supreme Court set forth the standards governing admissibility of expert testimony under . . . [Rule] 703." *Apple Inc. v. Wi-LAN Inc.*, 25 F.4th 960, 971 (Fed. Cir. 2022). "To be admissible, 'proposed expert testimony must be supported by appropriate validation – *i.e.*, good grounds, based on what is known.'" *ParkerVision, Inc. v. Qualcomm Inc.*, 116 F.4th 1345, 1363 (Fed. Cir. 2024) (quoting *United States v. Doak*, 47 F.4th 1340, 1358 (11th Cir. 2022)).

Rule 703 provides:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703.

"Under Federal Rule of Evidence 703, an expert can have 'good grounds' for his opinion even when he did not 'obtain[ ] the basis for his opinion from personal perception.'" *ParkerVision*,

5

116 F.4th at 1363 (alteration in original) (quoting *Monsanto Co. v. David*, 516 F.3d 1009, 1015 (Fed. Cir. 2008)). "Instead, 'experts can base their opinion on facts or data in the case 'that the expert has been made aware of.'" *Id.* (quoting *St. Louis Condo. Ass'n, Inc. v. Rockhill Ins. Co.*, 5 F.4th 1235, 1245 n.8 (11th Cir. 2021)).[5]

"Decisions construing Rule 703 and related rules have made clear that Rule 703 is not a vehicle for introducing unreliable evidence into the trial record." *IOENGINE, LLC v. PayPal Holdings, Inc.*, No. CV 18-452-WCB, D.I. 528 at 4 (D. Del. June 23, 2022). "[T]he district court considering the admission of expert testimony based on underlying facts or data pursuant to Rule 703 must make a determination of reliability under Rule 703 that is equivalent to the reliability requirement of Rule 702[.]" *Id.*

---

[5] "Rule [703] provides that an expert may base his opinion on otherwise inadmissible evidence so long as other 'experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject.'" *Langbord v. United States Dep't of Treasury*, 832 F.3d 170, 195 (3d Cir. 2016) (quoting Fed. R. Evid. 703); *see Acadia Pharms. Inc. v. Aurobindo Pharma Ltd.*, No. 22-CV-1387-GBW, D.I. 125 at 8 (D. Del. Nov. 25, 2024). "The burden to establish reasonable reliance is on the proponent of challenged expert testimony." *Wi-LAN Inc. v. Sharp Elecs. Corp.*, 992 F.3d 1366, 1376 (Fed. Cir. 2021).

## III. DISCUSSION

### A. The Court Does Not Exclude the Metzker-Albert Testimony

As explained below, the Court denies Plaintiff's request to exclude (1) "Dr. Metzker's opinions as an expert on invalidity and infringement," and the Court also denies Plaintiff's request to exclude (2) "Dr. Albert's opinions as an expert on invalidity and infringement." D.I. 186-1 ¶¶ 3-4.

#### 1. Summary of Pertinent Facts

According to Plaintiff, there are generally two reasons why "the testimony of Drs. Albert and Metzker should be excluded under Rule 703." D.I. 187 at 15.

First, Plaintiff contends that "Drs. Metzker's and Albert's reports are products of unreliable methodology." *Id.* at 15 (capitalization and emphasis altered). This is so, according to Plaintiff, because: (a) "Dr. Metzker extensively relies upon flawed and incomplete analyses from Dr. Albert"; (b) "Drs. Metzker's and Albert's testimony on formulation of opinions is mutually contradictory"; and (c) "Dr. Albert's testimony reveals fundamental flaws, irregularities and contradictions in his methodology." *Id.* at 15 (first quote) (capitalization and emphasis altered), 18 (second quote) (capitalization and emphasis altered), 21 (third quote) (capitalization and emphasis altered).

Second, Plaintiff contends that "Drs. Metzker's and Albert's invalidity opinions rely inappropriately upon Invitae's infringement contentions and constitute a practicing of the prior art defense." *Id.* at 26 (capitalization and emphasis altered). Specifically, Plaintiff asserts that it is improper for "Drs. Metzker and Albert . . . [to purportedly] base their entire invalidity opinions

7

upon one of Invitae's infringement theories, disclosed early on in litigation, which Invitae's experts do not pursue at all." *Id.* at 27.

## 2. Analysis

As noted above, Plaintiff requests that the Court exclude (1) "Dr. Metzker's opinions as an expert on invalidity and infringement" and (2) "Dr. Albert's opinions as an expert on invalidity and infringement." D.I. 186-1 ¶¶ 3-4. As explained in more detail below, the Court denies Plaintiff's requests because Plaintiff has not provided adequate legal support to exclude the Metzker-Albert Testimony before trial.

Although Plaintiff identifies purported shortcomings with the methodologies of Dr. Metzker and Dr. Albert,[6] Plaintiff does not explain why, as a matter of law, such purported flaws render the Metzker-Albert Testimony inadmissible under Federal Rule of Evidence 702 or Federal Rule of Evidence 703.

Many of Plaintiff's contentions lack supporting authority. For example, Plaintiff contends that "Dr. Metzker extensively relies upon flawed and incomplete analyses from Dr. Albert" and "Dr. Albert's testimony reveals fundamental flaws, irregularities and contradictions in his methodology." *Id.* at 15 (first quote) (capitalization and emphasis altered), 21 (second quote) (capitalization and emphasis altered). Yet, Plaintiff's opening brief (D.I. 187) in support of those two contentions is entirely lacking in legal support. *See* D.I. 187 at 15-18 (providing zero citations to legal authority), 21-26 (same). In this instance, this is insufficient to persuade the Court to exclude the Metzker-Albert Testimony before trial. *See VoiceAge EVS LLC v. HMD Glob. OY*, No. CV 19-1945-GBW, 2025 WL 1397239, at *22 (D. Del. May 14, 2025) (rejecting contention where proponent "provided insufficient legal support").

---

[6] *See* D.I. 187 at 15, 18, 21, 26.

8

The portions of Plaintiff's opening brief (D.I. 187) that do cite supporting authority fail to "connect[] law to [the] facts" of this case.[7] For example, Plaintiff cites two cases in support of its contention that "Drs. Metzker's and Albert's testimony on formulation of opinions is mutually contradictory." D.I. 187 at 18 (capitalization and emphasis altered). Yet, as explained below, Plaintiff does not adequately explain why those two cases are persuasive and weigh in favor of excluding the Metzker-Albert Testimony under Federal Rule of Evidence 702 or Federal Rule of Evidence 703.

First, Plaintiff cites *Stein v. Foamex Int'l, Inc.* for the proposition that "Rule 26(a)(2)(B) . . . prevent[s] experts from 'blanket adoption of reports prepared by counsel.'" D.I. 187 at 21 (quoting No. CIV. A. 00-2356, 2001 WL 936566, at *5 (E.D. Pa. Aug. 15, 2001)). Unlike Plaintiff's Motion, the *Stein* case addressed motions based on Federal Rules of Civil Procedure 26 and 37. *See* 2001 WL 936566, at *5-7. Plaintiff fails to explain why the *Stein* case is relevant to whether the Metzker-Albert Testimony is contrary "to the principles announced in *Daubert*." D.I. 79 ¶ 4(f)(ii).

Second, Plaintiff cites *Waymo LLC v. Uber Techs., Inc.* for the proposition that "experts should not 'serve as a mouthpiece for arguments that [a party's] lawyers can make.'" D.I. 187 at 21 (alteration in original) (quoting No. C 17-00939 WHA, 2017 WL 6887043, at *5 (N.D. Cal. Nov. 14, 2017)). As explained below, although the *Waymo* case is relevant to the principles

---

[7] *Sioson v. Knights of Columbus*, 303 F.3d 458, 460 (2d Cir. 2002); *see, e.g.*, *AtriCure, Inc. v. Meng*, 12 F.4th 516, 531 (6th Cir. 2021) ("A party does not preserve an issue in our court by raising it in [a] 'perfunctory' way; the party must connect the relevant facts to the relevant law."); *Lipton v. Cnty. of Orange, NY*, 315 F. Supp. 2d 434, 440 n.3 (S.D.N.Y. 2004) ("[T]he argument section of plaintiff's [m]emorandum contains sparse recitations of various legal propositions, but fails to connect them to properly cited facts underlying this case. It is not our responsibility, especially in a counseled case, to form plaintiff's arguments for him by researching the record and relevant case law.").

9

announced in *Daubert*, Plaintiff fails to explain why the *Waymo* case is relevant to Plaintiff's contentions.

The portion of the *Waymo* case that Plaintiff cites addressed whether an expert's proffered testimony reflected "specialized knowledge." 2017 WL 6887043, at *5. After finding that the "[s]traightforward application of grade-school arithmetic to uncomplicated numbers is well within the ken of the average juror," the *Waymo* court stated that "[t]here is no reason for [the proferred expert] to serve as a mouthpiece for arguments that Waymo's lawyers can make."[8] In this instance, Plaintiff does not compare the Metzker-Albert Testimony to the expert testimony that was excluded in the *Waymo* case for being within the common knowledge of the average layman. Nor does Plaintiff explain how the *Waymo* case is relevant to the contentions that Plaintiff raised in its opening brief (D.I. 187).

Similarly, Plaintiff's request that "Natera's invalidity expert testimony relying upon Invitae's infringement contentions should be excluded" is cursory and lacks sufficient legal support. D.I. 187 at 28. The entirety of Plaintiff's opening briefing on this issue is as follows:

> A party's contentions are preservational documents,[9] intended to disclose the full scope of theories a party may rely upon in a case, and a party is not bound by each and every theory it advances. Just the opposite, it is expected that a party will ***not*** continue to pursue every single theory it advances. As the Federal Circuit explains, "the litigation process is not adversely affected by having parties list multiple theories of infringement in their original contentions ***with the goal of whittling them down*** by the time of trial. Because it is not undesirable to have parties list all possible infringement contentions at the case's outset, it is not unfair to expect that all possible infringement contentions be presented at that time." *Astellas US LLC*

---

[8] *Id.* (citing *United States v. Morales*, 108 F.3d 1031, 1038 (9th Cir. 1997) for the proposition that "expert witness testimony is admissible under FRE 702 if the subject matter at issue is 'beyond the common knowledge of the average layman'").

[9] The Court notes that the term "preservational document" appears in zero judicial opinions, according to Docket Navigator, Lexis, and Westlaw.

*v. Hospira, Inc.*, No. 2022-1878, 2022 WL 17998229, at *5 n.6 (Fed. Cir. Dec. 30, 2022).

Drs. Metzker and Albert, however, base their entire invalidity opinions upon one of Invitae's infringement theories, disclosed early on in litigation, which Invitae's experts do not pursue at all. Throughout Drs. Metzker's and Albert's reports and deposition testimony, they state that they rely upon Invitae's infringement contentions for their invalidity opinions. For example, Dr. Metzker's opening report references Invitae's infringement contentions 128 times. Ex. 9 at 121:14-122:6. While Dr. Metzker cited Invitae's infringement contentions 128 times in his invalidity report, he never once cited Natera's invalidity contentions. *Id.* at 126:20-127:4. Dr. Albert, too, during his deposition, testified that he relied upon Invitae's infringement contentions to form his invalidity opinions. Ex. 10 at 261:11-16. His opening report refers to Invitae's infringement contentions 25 times, and never refers to "invalidity contentions" even once.

Apparently, Natera contends that one of Invitae's early infringement theories in its contentions, if adopted, would cause the claims to read upon prior art that allegedly matches how Natera's products operate. By doing this, Natera advances the defense that it is "practicing the prior art."

A party accused of infringement, however, may not advance such a "practicing the prior art" theory in its defense. Indeed "accused infringers are not free to flout the requirement of proving invalidity by clear and convincing evidence by asserting a 'practicing prior art' defense to literal infringement under the less stringent preponderance of the evidence standard." *Tate Access Floors v. Interface Archit. Resources*, 279 [F.3d] 1357, 1367 (Fed. Cir. 2002).

In addition to being legally improper, Dr. Metzker's and Albert's reliance on Invitae's infringement contentions was unreliable. There can be no dispute that such preservational litigation contentions are not the type of material upon which technical experts would rely.[10] Dr. Metzker admits that he would "[t]ypically not" rely upon infringement contentions "as a scientist doing science." Ex. 9 at 146:3-147:24. Likewise, Dr. Albert had no understanding of the purpose of contentions, who prepares them, or if there any rules related to how they are used. Ex. 10 at 261:25-262:19, 266:7-267:24. Dr. Albert never investigated such topics. *Id.* at 263:12-265:8. Dr. Albert further testified that he did not even know if Natera had any invalidity contentions, nor what invalidity contentions even meant. *Id.* at 269:7-14. While both Drs. Metzker and Albert relied upon Invitae's infringement

---

[10] In this instance, Plaintiff does not back up this assertion with legal support. Importantly, courts are not bound to follow the *ipse dixit* of litigants. *See Wireless Discovery LLC v. Eharmony, Inc.*, No. CV 22-480-GBW, 2024 WL 3825279, at *3 (D. Del. Aug. 15, 2024); *Murray v. Earle*, 334 F. App'x 602, 606 (5th Cir. 2009) (nonprecedential).

contentions for their invalidity arguments, Natera's *invalidity* contentions are strangely entirely absent from the lists of materials they considered for their reports.

D.I. 187 at 26-28 (some alterations added).

Again, Plaintiff does not adequately explain why the two cases it cites are persuasive and weigh in favor of excluding the Metzker-Albert Testimony under Federal Rule of Evidence 702 or Federal Rule of Evidence 703. Neither of the two cases that Plaintiff cites expressly addressed Federal Rule of Evidence 702 or Federal Rule of Evidence 703. *See generally Astellas US LLC v. Hospira, Inc.*, No. 2022-1878, 2022 WL 17998229 (Fed. Cir. Dec. 30, 2022) (nonprecedential); *Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, 279 F.3d 1357 (Fed. Cir. 2002).[11]

For the reasons stated above, the Court finds that Plaintiff has not provided adequate legal support to exclude the Metzker-Albert Testimony before trial. Thus, at this time, the Court will not exclude the Metzker-Albert Testimony. *See* D.I. 271 at 10-11.

## IV.  CONCLUSION

For the foregoing reasons, the Court denies-in-part the Motion (D.I. 186).[12] Specifically, the Court is denying Plaintiff's request to exclude the expert opinions of Dr. Metzker and Dr. Albert on invalidity and infringement.

---

[11] It is unclear how the two cases that Plaintiff cites support excluding the Metzker-Albert Testimony under the *Daubert* standard. The first case that Plaintiff cites found that a "district court [] did not abuse its discretion in finding Astellas's compounding infringement theory and related evidence untimely, nor did the district court abuse its discretion in concluding that the Third Circuit's *Pennypack* factors supported the district court's decision." *Astellas*, 2022 WL 17998229, at *7. The second case that Plaintiff cites found that "Interface['s] first argu[ment] that regardless of the proper claim construction, its panels cannot literally infringe because they merely practice the prior art, or that which would have been obvious in light of the prior art" was a "contention [that] lacks merit." *Tate Access*, 279 F.3d at 1365. That finding in the *Tate Access* is unremarkable given that "invalidity is not a defense to infringement, it is a defense to liability." *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 644 (2015).

[12] "[E]ven though [the Court] [is] [partially] denying the [M]otion for now, the parties may make (and, indeed, in order to preserve the issue, must make) objections at appropriate times at trial."

\* \* \*

WHEREFORE, at Wilmington this 26th day of June 2025, **IT IS HEREBY ORDERED** that the Motion (D.I. 186) is **DENIED-IN-PART**.

_____
GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

---

*Cephalon, Inc. v. Slayback Pharma Ltd. Liab. Co.*, No. CV 17-1154-CFC, D.I. 314 at 1-2 (D. Del. Sept. 5, 2019).